### L. E. WATERMAN CO. v. LOCKWOOD et al. (two cases).

### SAME v. JOHNSON.

(Circuit Court, D. Massachusetts. January 16, 1902.)

#### Nos. 951, 1,223, 1,224.

**1. PATENTS—NOVELTY—FOUNTAIN PENS.**
> The Waterman patent, No. 307,735, claims 1 and 2, for an ink duct for a fountain pen, consisting of a groove in a bar for conducting the ink from the reservoir to the point of the pen, are void for lack of patentable novelty.

**2. SAME.**
> The Waterman patent, No. 293,545, for an ink duct for a fountain pen, the novel feature consisting of longitudinal fissures in the sides or walls

of the groove, for conducting the ink to the pen, if valid must be limited to fissures made integrally in the walls of the duct or groove, and is not infringed by the use of a reed inserted in the groove.

In Equity. Suit for infringement of letters patent No. 293,545, granted February 12, 1884, and No. 307,735, granted November 4, 1884, to Lewis E. Waterman, for fountain pens. On final hearing.

Walter S. Logan, Fred C. Hanford, and Samuel S. Watson, for complainants.

Oliver R. Mitchell and Charles S. Thurston, for defendants.

LOWELL, District Judge. No. 951 is a bill in equity brought for the infringement of letters patent Nos. 293,545 and 307,735.

Of No. 307,735 the following claims are in issue:

"(1) An ink duct for a fountain pen, consisting of a groove in a bar on the side next the pen, extending throughout its entire length on the same plane, and communicating with the ink reservoir, for conducting the ink from the reservoir to the point of the pen."

"(2) An ink duct for a fountain pen, consisting of a grove in a bar extending throughout its entire length in the side which is to be next the pen and on the same plane, and communicating with the ink reservoir, and of gradually decreasing depth from the end which enters the reservoir to the end near the point of the pen."

Claim 1 appears to be for nothing more than a groove or gutter for conducting ink from the reservoir to the point of the pen. I cannot perceive any novelty in this, and I doubt the utility. The advantage of a gutter, closed for the most part, over a tube which was old in the art, is not apparent. Claim 2 differs from claim 1 only in the additional element of gradually decreased depth. No novelty appears in this, and, furthermore, it is suggested by some of the earlier patents; for example, Lewis, No. 272,066, Fig. 4, and Holland, No. 276,692. Speaking generally, indeed, the specifications of No. 307,735 suggest that Mr. Waterman conceived his real invention to lie either in claim 3, which is admitted not to be infringed, or in No. 293,545, which, together with 307,735, originally formed one application. Claims 1 and 2 of No. 307,735 are held invalid. It is fair to the complainant to say that, though they were not expressly withdrawn, they were not much pressed in argument.

All the claims of No. 293,545 are in issue, as follows:

"(1) An ink duct for a fountain pen, consisting of a bar having a longitudinal groove formed in its surface, and one or more longitudinal fissures in the side or sides of said groove, substantially as set forth.

"(2) In a fountain pen, the combination, substantially as hereinbefore set forth, of a barrel or ink reservoir, a tube connected therewith, an ink duct supported within said tube, and consisting of a bar having one or more longitudinal grooves formed in that portion of its surface which is in proximity to the pen, with one or more longitudinal fissures in the side or sides of said groove or grooves, and a pen secured between said tube and ink duct.

"(3) A fountain pen having an ink duct provided with one or more longitudinal fissures formed in its walls, for facilitating the passage of the ink through said duct."

The patent is concerned with an ink duct for a fountain pen, and its novel feature, the gist of the complainant's invention and of the patent, consists in longitudinal fissures in the sides or walls of the groove, by

which fissures the ink is carried from the reservoir to the nibs of the pen. The complainant's fissures are made as above stated. In most of the defendant's pens alleged to infringe there are no fissures in the substance of the ink duct, or in the sides or walls of the groove, except so far as fissures are made by a separable reed inserted in the groove and continuous for its whole length. The defendant alleges that the insertion of such reeds or like bodies is old in the art, and this appears to be true. See Prince, No. 12,301, Fig. 5, p. 2, line 3, claim 1; Stewart, No. 253,953, p. 2, line 35; Lewis, No. 272,066, Figs. 3 and 4, p. 1, line 35; Holland, No. 276,692, Fig. 1; Purdy, No. 279,104. The complainant contends that some of these patents do not support the defendant's argument, because they deal with top-vented pens. There is nothing in the claims of the patent in suit confining it to bottom-vented pens. If the complainant's case were otherwise made out, the defendant could not escape merely by boring a small hole in the top of the pen. Furthermore, as has been said, the only novelty in the claims in suit consists in the "longitudinal fissures." The ink duct, bar, and groove are not novelties, either separately or in combination. The defendant's pens have no longitudinal fissures made in the solid walls or sides of the ink duct or groove. The defendant's fissures, if any there are, are the spaces between the reed just mentioned and the walls or sides of the groove. If a reed or other long and narrow body be placed in near relation with a duct or groove or tube, long and narrow spaces somewhat resembling slits or fissures will be created, more or less closely resembling the spaces created in the defendant's pens. If such fissures are found in the prior art, the defendant must prevail. If these are the mechanical equivalent of the complainant's fissures, the patent is void for want of invention. If they are not such equivalent, the defendant does not infringe, even if the earlier pens did not in all other respects resemble either the complainant's or the defendant's.

The complainant further contends that the reeds, etc., shown in earlier pens are barred from comparison, because they vibrate. Whether the defendant's reeds vibrate or not I do not know. Doubtless they vibrate less than those of Holland, for example. But, even if it could be shown that Holland's reed has a function wholly wanting in the defendant's, the former would afford no less support to the defendant's argument. If the defendant's pens are structurally similar to, but functionally different from, the prior art, they do not infringe a valid claim of the complainant's patent; but I think that even in function they are substantially similar to the prior art.

The complainant contends that his groove and fissures convey ink to the pen in a manner functionally different from that of earlier pens, and that the defendant's pen, though different in some details, is functionally similar to the complainant's. Precisely what is this supposed difference, and what this similarity of function, is hard to state. Capillary attraction as a force to bring ink to the pen was not unknown before Waterman. See Latourette, No. 147,333: "The capillary feeder is an important element to the successful operation of a fountain pen, in that it insures the feeding of the ink, and at the same time prevents the escape of it intermittently in globules, as it does in

other arrangements. A piece of wire, or a fine chain, or a hair, will serve well for a feeder, but a thread of fibrous material is the best." Stewart, No. 253,953, p. 2, line 30; Gard, No. 264,451, p. 1, line 80. The complainant's pen is operated in part by gravity. See page 1, line 61, of the patent in suit. In all cases, both gravity and capillary attraction combine, doubtless in varying proportions, to accomplish the desired result.

In argument, complainant's counsel contended that, both in the patent in suit and in the defendant's pens, the downward flow of ink and the upward flow of air was simultaneous and continuous, while in older pens the flow had alternated. Yet some alternating movement, even in the complainant's pen, seems to be admitted. See Complainant's Record, Fols. 1152 and 1168.

It follows that, even if the complainant's patent be valid when limited to fissures made in the integral walls of the duct or groove (concerning which point no opinion is expressed), yet it is not infringed by the defendant's pen. This decision is reached upon the prior patents in evidence, and the numerous exhibits of earlier pens need not be considered.

Nos. 1223 and 1224 are suits brought for the infringement only of letters patent No. 293,545. The decision of these two cases follows that of No. 951. In all cases the bills are dismissed, with costs.

Bills dismissed, with costs.